FILED

2004 NOV 19  A 10: 43

U.S. DISTRICT COURT
HARTFORD, CT.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

COUNTRY AMUSEMENTS, INC., ET AL     : CIVIL ACTION NO.: 3:03CV893JDS
                    Plaintiffs

VS.

ANTHONY PISKURA, ET AL
                    Defendants      : ,NOVEMBER 18, 2004

## JOINT TRIAL MEMORANDUM

1. **TRIAL COUNSEL**

   Robert C. Mirto, Esq., 140 Captain Thomas Boulevard, West Haven, CT 06516,

1-203-932-2225 and Steven B. Rasile, Esq., 98 Elm Street, West Haven, CT 06516, 1-203-

934-7050 will try this case for the Plaintiffs.

   Stephen P. Fogerty, Esq., 325 Post Road West, Westport, CT 06880, 1-203-227-

2855 will try this case for the Defendants.

2. **JURISDICTION**

   This case was removed from the Connecticut State Court to the Federal Court

pursuant to 28 U.S.C. Section 1441(b) and this Court has diversity jurisdiction pursuant to

28 U.S.C. Section 1332.

3. **JURY**

   The Plaintiffs have claimed this case for a jury trial and it shall be tried as such.

4. **LENGTH OF TRIAL**

The trial will take approximately 1½ weeks.

5. **FURTHER PROCEEDINGS**

To be completed after discussion between counsel.

6. **NATURE OF CASE**

The Plaintiffs allege that the Defendant Anthony Piskura and his wife Lisa Piskura, the son and daughter-in-law of the Plaintiffs Marie Piskura and Peter Piskura, and the Defendant Anthony Piskura's corporation conspired to breach a contract Anthony Piskura had with the Plaintiffs to run their corporation in a reasonable and honest fashion for one year in order for the parties to determine whether or not the business would be sold to him. The business is a carnival business which has been in existence for a many of years. The Plaintiffs allege that the Defendants not only breached their responsibility to run the corporation in a reasonable fashion, but, instead, converted corporate funds, failed to pay corporate bills and attempted to lure Plaintiffs' business customers away from them and do business with the corporation owned by the Defendants. Plaintiffs allege that the Defendants participated in a one year joint operation to bankrupt the Plaintiffs' corporation and convert all of its assets to their own use. The parties had previously had a falling out and had reconciled before this one venture, but the Plaintiffs claim that the Defendant

Anthony Piskura never intended to run this corporation in a reasonable fashion, but, instead, intended and did cause grievous harm to the financial well being of the Plaintiffs Marie Piskura and Peter Piskura and the Plaintiff corporation.

7. **TRIAL BY MAGISTRATE JUDGE**

To be completed after discussion between counsel.

8. **LIST OF WITNESSES**

Marie Piskura, P.O. Box 126, Newton, CT 06470

This witness will testify that she has been and is an owner of Country Amusements, a carnival business which has been in existence for a great number of years. At the time of the entry into a contract with her son Anthony to run the business for a year, she and her husband Peter were the sole owners of the business corporation. Both Marie and Peter hoped to sell the business to Anthony and the parties entered a preparatory statement to that effect. The parties agreed that Anthony would run the corporation as if it were his own for a period of one year. The parties anticipated that, if Anthony ran the corporation to the satisfaction of all parties, the sale would take place and payment would be made over a period of ten years. Marie Piskura will testify that she and her husband trusted their son implicitedly because of the family situation and because they had reconciled from a previous dispute and because Anthony had said he was sorry and wanted to re-establish

a close family relationship, they turned the corporation over to him for one year. She will

testify that that relationship was based upon the trust of a mother and son and, further,

upon the trust that Anthony had regained by starting to work again for the corporation prior

to the entry into this agreement. Marie will further testify that when the corporation was

turned back over to her, sometime in September, 2002, she discovered that not only had

Anthony not paid any bills or very few bills of the corporation, but that he had not paid any

taxes and had used corporate assets for his own ends. She will testify that the corporation

has suffered huge financial damages and is struggling now to survive as a result of

Anthony's actions  and is continuing to struggle to the present time.     <u>3.0 hours</u>

    <u>Peter Piskura, P.O. Box 126, Newton, CT 06470</u>

    This witness will testify he has been and is an owner of Country Amusements, a

carnival business which has been in existence for a great number of years. At the time of

the entry into a contract with his son Anthony to run the business for a year, he and his wife

Marie were the sole owners of the business.  Both Peter and Marie hoped to sell the

business to Anthony and the parties entered a preparatory statement to that effect. The

parties agreed that Anthony would run the corporation as if it were his own for a period of

one year. The parties anticipated that, if Anthony ran the corporation to the satisfaction of

all parties, the sale would take place and payment would be made over a period of ten

years.  Peter Piskura will testify that he and his wife trusted their son implicitedly because of the family situation and because they had reconciled from a previous dispute, and because Anthony had said he was sorry and wanted to re-establish a close family relationship, they turned the corporation over to him for one year.  He will testify that that relationship was based upon the trust of a father and son and, further, upon the trust that Anthony had regained by starting to work again for the corporation prior to the entry into this agreement.  Peter will further testify that when the corporation was turned back over to him, sometime in September, 2002, he discovered that not only had Anthony not paid any bills or very few bills of the corporation, but that he had not paid any taxes and had used corporate assets for his own ends.  He will testify that the corporation has suffered huge financial damages and is struggling now to survive as a result of Anthony's actions and its problems are continuing to the present time.    2.5 hours

Tammy Piskura, 15 Kozley Road, Tolland, CT

This witness will testify as to the actions of Anthony Piskura over the year that he ran the corporation since she was present and saw how he operated the corporation.  She will testify that she owned one-half of a ride that was booked into the carnival.  The other half of the ride was owned by Lisa Piskura.  She will testify that Anthony Piskura took his funds for booking in the ride and did not give her an equal amount as she was entitled to,

but, instead, used corporate funds to pay companies that held liens on rides not belonging to Country Amusements.    <u>1.5 hours</u>

<u>Dan Mills, RI; Alan Button and Steven Button, Bloomfield, CT; John and Michael Magnotta, Hartford, CT</u>

These witnesses will testify that, during and before the time Anthony Piskura took over the corporation, he indicated on a number of occasions that he would do anything in his power to destroy Country Amusements and see that his parents were bankrupted. Alan Button and Steven Button will testify that they were approached by Anthony Piskura who asked them if they would, for money, sabotage equipment owned by Country Amusements so that it would cause an accident and injure patrons thereby harming the corporation.

<u>Total Time 3.5 hours</u>

<u>Robert Rifkin, CPA, 636 Kings Highway, Fairfield, CT</u>

This witness will testify he is and has been for a long period of time the accountant for Country Amusements, Inc.  He will testify as to the status of the corporation prior to Anthony taking it over in 2002 and the status of the corporation at the present time as a result of bills that Anthony Piskura did not pay and money that he converted which belonged to the corporation.  He will also testify on a number of other general considerations regarding the business of Country Amusements.    <u>2.0 hours</u>

<u>Subpoenaed representatives of Glenville School, Greenwhich, CT</u>

The subpoenaed representative will testify that as a result of solicitation by Anthony Piskura, Glenville School will now use him to run their carnivals. The representative will testify that, prior to that solicitation, Glenville School had been a long-time customer of Country Amusements and that Anthony Piskura approached them while he was running the corporation for his parents.    1.0 hour

Subpoenaed representative of Ellington Fire Department, Rte. 140, Brookside Park, Ellington, CT

The subpoenaed representative will testify that during the time that Anthony Piskura was running his parents' corporation, he approached Ellington to solicit their account which had previously been an account of Country Amusements. The representative will testify that based on the potential conflict between Anthony and his parents, and as a result of that solicitation, they hired another carnival company to run their carnival. That representative will also testify as to the amount of revenue that had been generated in previous years.    1.0 hour

Subpoenaed representative of Our Lady of Victory, West Haven, CT

The subpoenaed representative will testify that during the time that Anthony Piskura was running his parents' corporation, he approached Our Lady of Victory to solicit their account which had previously been an account of Country Amusements. The representative will testify that based on the potential conflict between Anthony and his

parents, and as a result of that solicitation, they hired another carnival company to run their carnival. That representative will also testify as to the amount of revenue that had been generated in previous years.    <u>1.0 hour</u>

    <u>Patricia Piskura, 210 Concord Circle, Lewisville, NC 27023</u>

    This witness will testify that she is the ex-wife of the Defendant Anthony Piskura and previously had owned 24% of Country Amusements when Anthony Piskura owned 25%. She will testify that both parties were bought out by Country Amusements, Inc. as a result of disputes between them. She will further testify that subsequent to that Anthony Piskura told her on a number of occasions, beginning a while ago and up until quite recently, that he was determined to bankrupt his parents' company and ruin them. He told her that he would stop at nothing and would not rest until his parents and their corporation was destroyed.    <u>1.5 hours</u>

    The Plaintiffs do not know if other witnesses will be called at the present time since the Plaintiffs' investigation is ongoing and, as the trial approaches, strategy may change and witnesses not now anticipated may be called. The Plaintiffs will update this Joint Trial Memorandum as soon as that determination is made.

**9.**     **Exhibits**

    <u>Exhibit 1.</u>    Agreement between Peter Piskura, Marie Piskura and Anthony

Piskura to sell Country Amusements, Inc. to Anthony Piskura. The agreement is dated October 1, 2001.

Exhibit 2.     Settle-up sheets for all of the carnivals in 2002 showing the revenue earned from each carnival. There are 19 such settle-up sheets.

Exhibit 3.     Checks written to Gauvin Properties and a ledger sheet showing payment for two missing checks. The check numbers which comprise payments made by Anthony Piskura to Gauvin Properties for his own rent are 12762, 12773, 12786, 12796, 12805, 12818, 12918, 13001, 13097, 13087. Those checks total $9,450.00. Check numbers 12762 and 12773 are missing, but appropriate ledger sheets will be introduced to show that those checks were paid. The total of those payments is $9,450.00.

Exhibit 4.     Checks payable to CIT and Gateway for computers purchased by Anthony Piskura and which he has kept. The computers were purchased with Country Amusement funds. CIT check numbers are 12787, 12801, 12804, 12897, 12905, 12922, 13053, 13084, 13220 and a ledger sheet showing an August 11, 2002 phone transfer in the amount of $312.06. We will also introduce the ledger for check 12922.

Exhibit 5.     We are introducing checks to the Bank of Blue Valley for accounts that were not accounts of Country Amusements. Those payments are shown on check numbers 13005, 13006, 13009, 13010, 13043, 13042, 13041, 13082, 13262, 13263,

13067, 13068, 13069, 13070, 12776.  For check numbers 13262, 13263 and 12777, we will introduce the ledger sheets for each of those.

Exhibit 6.        Checks for personal expenses of Anthony Piskura including check number 12886 for the purchase of a welder in the amount of $3,073.36; check number 13293  for the purchase of equipment in the amount of $2,455.00 and check numbers 13128 and 13111 for the purchase and shipment of a rock wall in the amounts of $714.02 and $6,625.00 , none of which were authorized by Country Amusements nor owned by Country Amusements.  Those checks total $12,867.38 as shown on a ledger sheet.

Exhibit 7.        Checks for utilities totaling $3,095.87.  These are comprised of check numbers 12887, 12781, 12891, 12892, 12893 and the ledger for check 12781 payable to various utility companies for property owned by Anthony Piskura and not Country Amusements.

Exhibit 8.        A bank check in the amount of $1,723.26 for a COBRA insurance payment for Lisa Piskura which was not authorized.

Exhibit 9.        Bank check number 004526845 which is a check from Fleet Bank which is payable to Benefit Concepts.

Exhibit 10.      Updated statements from the Federal and State Government regarding outstanding taxes.  Updated statements from the various taxing agencies will be

marked at trial and will include interest and principal up until the date of trial.

    <u>Exhibit 11.</u>    A check to Oakley Waste Management from County Amusements.

    <u>Exhibit 12.</u>    Check numbers 13038, 12920 and 12898 in the amounts of $125.00. $860.52, $371.32 respectively to Verizon Wireless.

    <u>Exhibit 13.</u>    Check number 130127 to Coventry Mini Storage in the amount of $110.00.

    <u>Exhibit 14.</u>    Agreement dated October 9, 2002 between Str8 Arrow Enterprises, LLC and Holy Family Regional School.

    <u>Exhibit 15.</u>    Several invoices to Verizon Wireless, Oakley Waste Management and CIT for items purchased for Anthony Piskura and Lisa Piskura and paid for out of Country Amusement funds.

    The Plaintiffs indicate that there may be other invoices that will be introduced along with checks once they have completed their investigation of what was purchased under those invoices which were recently disclosed.

**10.**    **<u>TRIAL TO JURY</u>**

    Trial counsel have not yet had an opportunity to attempt to enter into a written stipulation of uncontroverted facts and into an agreed statement of contested issues of fact and law since defense counsel is out of State on urgent business.

**(b.)** <u>Jury</u>

**(1)** <u>Proposed Voir Dire Questions</u>

1.    Have any of you ever had any serious arguments with either parents or children over either personal or business matters?

2.    If so, do you think that those experiences would make it difficult for you to act impartially in a dispute between parents and their child?

3.    Do you think there should be a special relationship of confidence and trust between parents and their children?  If so, what do you think the scope of the relationship is?

4.    Have you either participated in the carnival business or had any experiences with a carnival entity, either positive or negative, that might effect your ability to be impartial in this case?

5.    Have any members of your family been the subject of a lawsuit?  If so, without getting into specific, what was the general nature of that lawsuit?

6.    Would that experience make it difficult for you to be impartial and to sit in this case?

**(2)** <u>Proposed Jury Instructions</u>

1.    <u>Breach of Contract.</u>  A contract is an agreement by which a

person undertakes to do or not to do a particular thing. _Its terms may be expressed in words or may be inferred or implied from the circumstances. The Plaintiffs in this case claim that there was an express oral argument between they and the Defendant that they would convey the business to the Defendant over a period of ten years for $1 million dollars, if, during a one year trial period he performed satisfactorily and responsibly in running the corporation. The Plaintiffs claim the Defendant Anthony Piskura's duties were to pay corporate bills and run the business in all aspects maximizing profit. Your first consideration should be "was there any express agreement between the Plaintiffs and the Defendant Anthony Piskura". If you find there was, you must then determine what the terms of that contract were and whether or not Anthony Piskura accepted those terms. If you find that he did, you must then turn to the issue of whether or not Anthony Piskura performed said contract satisfactorily or breached that agreement. If you find that Anthony Piskura did not perform his obligations under the terms of the agreement and that his failure to perform satisfactorily caused the Plaintiffs' damages, you must then turn to the issue of damages. If you determine that the Defendant broke his agreement with the Plaintiffs, it will be necessary for you to determine the amount of damages the Plaintiffs should recover. The Plaintiffs are entitled to fair compensation and only fair compensation for the breach of the contract. Bernard v. Pernhard v. Rochester German Insurance Co.,

79 Conn. 388, 398 (1906). A general principle of law is that whenever one person has committed a wrong against the other, the other shall be awarded damages to the extent that he will be as well off as though the wrong had not been committed. This principle would ordinarily apply where there has been a breach of contract unless you find that there has been fraud or other wrongs which could render the defendant liable for other damages. Those situations will be set forth for you at a later time in these instructions. The plaintiff is normally only entitled to recover damages to the extent that his loss is as a direct result of the defendant's breach of contract and it cannot enhance its damages by anything it did or failed to do which was not directly attributable to that breach. Leventhal vs. Stratford, 121 Conn. 290, 299 (1936); Bernstein v. Nemeyer, 213 Conn. 665 (1990); Spera v. Audiotape Corp., 1 Conn. App. 629 (1984). The principle of damages is subject to a qualification which you may find applicable in this case. The damages awarded to the Plaintiffs cannot go beyond those which you can fairly find to have been in the contemplation of the parties at the time they made the contract. Valente v. Affinito, 118 Conn. 581, 585 (1934). In other words, the Plaintiffs would be entitled to damages which the Defendant, as a reasonable person, should have realized might result from that breach. As far as the damages claimed by the Plaintiffs flowed naturally from the nature of the agreement, the purpose apparent in it and the obligations assumed by the Defendant there

is no question, but that the Defendant must have contemplated them. Cohn v. Norton, 57 Conn. 480, 490, 491, (1889). If you find that there was a contract and that the Defendant breached the contract, you will then award the Plaintiffs, in your verdict, such a sum of money as will fairly compensate the Plaintiffs for all their damages you find were or should have been contemplated by the Defendant as a natural result of his breach of the contract or as a result of any circumstances outside the scope of the agreement which were or should have been known to him.

2.      Breach of Fiduciary Responsibility. The Plaintiffs allege in their complaint that as a result of their relationship with their son and his undertaking of the contract, it put him in a fiduciary responsibility to the corporation. A fiduciary relationship is one that is characterized by "a unique degree of trust and confidence between the parties". Beverly Hill Concepts, Inc. v. Shatz & Shatz, Riblcoff & Kotkin , 247 Conn. 48, 56 (1998). A fiduciary is under a duty to represent the interest of the other party. A fiduciary must act in scrupulous good faith and candor. The fiduciary must act honestly and with the finest and undivided loyalty to the trust not merely the standard of honor required of men dealing at arms length and the work a day world, "but with a punctilio of honor the most sensitive". Conover Development Corp. v. Zeller, 228 Conn. 206 (1994). The Plaintiffs claim that the fiduciary relationship was established because of the fact that Marie Piskura

and Peter Piskura had recently reconciled with their son. After a tearful reunion in which

he apologized for previous actions against them he indicated he just wanted to make up

to them the fact that they were again a family. Marie Piskura and Peter Piskura testified

that they agreed to turn the corporation over to their son because they implicitedly trusted

him because of the family relationship. If you find that a fiduciary relationship existed

between the Plaintiffs and the Defendant, then it requires that the burden of proof shift to

to the Defendant Anthony Piskura and he must prove to you that his actions amounted to

fair dealing. In other words, he must prove that he operated the corporation in a fair,

honest and reasonable fashion. However, contrary to the normal standard of proof which

is by a preponderance of the evidence, the standard of proof required under our law for

establishing fair dealing is not the ordinary standard, but the Defendant must prove fair

dealing by either clear or convincing evidence, clear and satisfactory evidence or clear,

convincing and unequivocal evidence. <u>Dunham v. Dunham</u>, 204, Conn. 303, 322, 323

(1987). That proof is a more rigid standard of proof than the normal standard of proof in

our civil law of a preponderance of the evidence. Convincing evidence has been defined

as a level of persuasion lying between the usual civil requirement of proof by a

preponderance of the evidence and the requirement of proof beyond a reasonable doubt

used in criminal cases. <u>Cookson vs. Cookson</u> 201, Conn. 229, 234 (1986). Clear and

convincing evidence is proof sufficient to satisfy a trier beyond an average certainty. <u>In re:</u> <u>Juvenile Appeal (84-3)</u>, 1 Conn. App. 463, 468, cert. denied, 193 Conn. 802 (1984). Thus, if you find that a fiduciary responsibility was established by the contract and the Defendant has not satisfied his clear and convincing burden of proof that he acted in a fair and responsible manner, then you must find in favor of the Plaintiffs on this issue.

   3. <u>Conversion.</u>  The Plaintiffs in this case are seeking damages for the loss of personal property and monies., By reason of unlawful conduct of the Defendant, it is asserting a cause of action for something which we lawyers call a conversion and I shall use that word in discussing the Plaintiffs right to recover.  Conversation, generally speaking, consists of the assumption of authority over or the performance of act in reference to personal property which is owned by another or the immediate possession of which another is entitled in violation of the rights of others.  The essence of the wrong is that the property has been dealt with by the person charged with the unlawful conduct that is, in this case the Defendant, in the manner adverse to and inconsistent with the rights of the owner or the person entitled to its immediate possession. <u>Healy v. Flammia</u>, 96 Conn. 233, 235 (1921), <u>Coleman v. Francis</u>, 102 Conn. 612, 615 (1925).

   First, let us look at the case from the Plaintiffs' side and let me explain to you what they must prove in order to lay a basis for recovery of damages.  They claim

that they were the sole and unrestricted owner of corporate assets including monies and were entitled to its immediate possession.  They are seeking to recover damages for its loss alleging that loss was due to the unlawful conduct of the Defendant.  <u>Charter Oak Lumber Co. v. Beberry & Sons, Inc.</u>, 122 Conn. 28, 31 (1936).  If you find that the Plaintiffs were the owners of the property in question and that the Defendant, himself, acted unlawfully in regard to that property, you must find damages for the Plaintiffs.

Now, let us turn to the question as to what the Plaintiffs must prove in order to recover with reference to the conduct of the Defendant.  If you remember in the definition of conversation, I stated that there must be wrongful conduct of the Defendant consisting of the exercise of authority over or to the performance of acts which reference the property which were in violation of the rights of the Plaintiff as the one who owned it or was entitled to its immediate possession.  If the Defendant, without lawful authority, took the property out of the possession fo the Plaintiffs or if the Defendant even though its possession of the property was not unlawful, made a use of it as his own, or dealt with it in a way that violated the Plaintiffs' rights as where the use exceeded the authority which had been given to the Defendant, he would be liable for its conversion.  That would also be so if without lawful authority he sold the property to another or otherwise disposed of it so as to put it beyond his control.  But, if on the other hand, you should find the

Defendant having possession of the property and selling, disposing or using it did not exceed the lawful authority given him, he will not be liable for its conversion.

To sum it up, the Plaintiffs are entitled to recover in this case, if, and only if, they can prove to you by a fair preponderance of the evidence that they were the unrestricted owners of the property, were otherwise entitled to its immediate possession, that the Defendant had dealt with it unlawfully by using it or disposing of it in a manner inconsistent with rights of the Plaintiffs to possession of it as I have explained these requirements are proof to you. If you conclude that the Plaintiffs are entitled to recover for the conversion of the property in question, you must decide what damages they are entitled to have awarded to them. The ordinary rules for measuring damages in a case like this is the value of the property at the time it was converted with interest from that time to the present day at the rate of 6% per annum. The value of the property at that time is determined by the price which would have to be paid in the open market for its replacement. In this case, we are dealing with monies which were allegedly misappropriated by the Defendant and used for his own object and therefore the amount of monies misappropriated would be the value plus interest at the rate of 6% per annum.

4.     Interference with Contractual Relations. The Plaintiffs have claimed that the Defendant interfered with their contractual relations with its customers namely, the

Plaintiffs have alleged that the Defendant attempted to procure and, in fact, did procure one contract with previous customers of the Plaintiffs while the Defendant was working for the Plaintiffs. In order to find interference with a contract, the Plaintiff must prove the existence of a contract, the alleged wrongdoers knowledge of the contract and his intentional and tortuous interference with the contract for proof that the interference caused the harm sustained and that damages resulted therefrom. To recover under this tort, the Plaintiff must prove the existence of a contract between itself and a third party. Peter and Marie Piskura have testified as to a contract between Country Amusements and the carnival customers. If you find that such a contract existed, then you may go on the second element which is the alleged wrongdoers knowledge of the contract.

In order to recover for interference with a contractual relations, the Plaintiffs must show that the Defendant knowingly, intentionally and improperly interfered with the Plaintiffs' contractual relations. Not every act that disturbs a contract or business expectancy is actionable. Blake v. Levy, 191 Conn. 257, 260 (1983). It may be satisfied with proof that the Defendant was guilty of fraud, misrepresentation, intimidation, molestation or that the Defendant acted maliciously. Robert S. Weiss & Associates, Inc. v. Wiederlight, 208 Conn. 525, 546 (1988). In this case, the Plaintiffs have introduced evidence that the Defendant Anthony Piskura was determined to make sure that he

destroyed Country Amusements, Inc. If you find the first three elements in favor of the Plaintiffs, you must then go on to the issue of causation. To hold the defendant liable for interference with a contract, the Plaintiff must prove that the Defendant's acts proximately caused the breach of the contract or the interference with the performance of the contract. Cormier v. Fugere, 185 Conn. 1 (1981). To prevail, the plaintiff has to show only that the defendant entered into an agreement with a third person or solicited him and had knowledge of the plaintiff's contract with the same person. The plaintiff must also show that the defendant had an active role in causing the third party to breach the contract. If the third party has already broken the contract or decided to do so and offers to contract with the defendant, the defendant has not induced the breach and is not liable. Poletto v. Perkins Restaurants, Inc., 617 F. Supp. 380 (ND Iowa 1985). On the other hand, if the actions of the defendant and the representations made by him caused the third party to contract with him and not the plaintiffs, then causation has been proved. Once you find causation, you may move on to the issue of damages. The plaintiff must prove that he or she suffered actual damage or loss as a result of the breach or interference. This element can be established by proof that a breach of the contract occurred to the plaintiff's detriment or that performance of the contract was rendered more difficult, expensive or burdensome. Herman v. Endriss, 187 Conn. 374 (1982). In addition, if you find that the

against her that flowed from her wrongdoing.

8. <u>Claims on Behalf of Marie Piskura and Peter Piskura, Individually.</u> In Paragraphs 7 and 8 of the complaint, the Plaintiffs individually have sued for conversion and for breach of an agreement. If you find that the Plaintiffs have suffered personal injuries as a result of the actions as set forth in the complaint, then you may award them personal damages for any liabilities that they have incurred as a result of the actions of the Defendants. The Plaintiffs claim that because of personal guarantees on several corporate responsibilities, their personal liabilities on tax liabilities and the loss of their reputation as a result of damage to the ability of the corporation to carry out its functions, they have suffered damages. If you find that they have, in fact, suffered said damages as a result of the actions of the Defendants, you may award them damages in the amount reasonably incurred as a result of the breach or actions of the Defendants.

11. <u>Anticipated Evidentiary Problems.</u>

Trial counsel have not yet had an opportunity to discuss this issue.

ROBERT C. MIRTO
COUNSEL FOR THE PLAINTIFFS

11/18/04
DATE SIGNED